JOURNAL ENTRY AND OPINION
{¶ 1} The appellant, Edith Lee Lipstreu, appeals the decision of the Cuyahoga County Court of Common Pleas, Civil Division, which granted summary judgment in favor of the appellee, The Hartford Insurance Company, and denied the appellant's motion for summary judgment.
 {¶ 2} The instant matter stems from an automobile accident between Lipstreu and Ronald Nubbie ("Nubbie"), which occurred on December 20, 1997. As a result of the accident, Lipstreu suffered injuries to her left hip and knee. Because of her injuries, she filed suit against Nubbie, Medical Mutual of Ohio, her health insurer, and Nationwide Insurance Company. Thereafter, on January 11, 2000, she settled with Nubbie for the $25,000 limit under the policy issued to him by Nationwide. Additionally, on January 18, 2000, Lipstreu settled with Nationwide under her own policy of insurance, which provided uninsured/underinsured ("UM/UIM") coverage with a limit of liability of $250,000 per accident.[1] In exchange for the above-noted settlements, Lipstreu released her claims against Nubbie, Medical Mutual of Ohio and Nationwide Insurance Company.
 {¶ 3} On August 28, 2000, Lipstreu notified her employer, National City Bank, via letter of her accident and asserted a claim for UIM coverage under National City Bank's insurers. On December 20, 2000, Lipstreu filed suit against Chubb Group of Insurance and Federal Insurance Company ("Chubb/Federal") in the Cuyahoga County Court of Common Pleas seeking UIM benefits under a commercial general liability policy issued by Chubb/Federal to National City.
 {¶ 4} The matter was subsequently removed to the United States District Court for the Northern District of Ohio, Eastern Division, and the parties filed motions for summary judgment. Thereafter, on June 21, 2001, the federal district court issued its Memorandum of Opinion and Order, which found that Lipstreu was not entitled to UIM coverage under the commercial general liability policy issued by Chubb/Federal to National City because the policy was not an automobile policy for the purposes of R.C. 3937.18. The court further found that a delay of over three years in giving notice of the claim to Chubb/Federal caused it to lose its subrogation rights.
 {¶ 5} Turning to March 8, 2001, Lipstreu filed the instant matter with the Cuyahoga County Court of Common Pleas seeking UIM coverage under yet another policy of insurance issued to National City by The Hartford Insurance Company. The Hartford Special Multi-Flex policy, issued to National City, was in effect from May 1, 1997 to May 1, 1998, at the time of Lipstreu's accident. Thereafter, the parties submitted motions for summary judgment, and on June 18, 2002, the lower court granted Hartford's motion for summary judgment determining that Lipstreu was not entitled to UIM coverage under the Hartford policy of insurance issued to National City. Specifically, the lower court held:
 {¶ 6} "The plaintiff is not entitled to coverage, even if coverage did exist, as she breached the terms and conditions of the policy. The policy provided that Hartford has a right of subrogation, reasonable notice and cooperation. The plaintiff's failure to notify defendant within a reasonable period of time of the accident destroyed the defendant's subrogation rights, and directly violated the express terms of the policy. The plaintiff's release of the tortfeasor without notice or consent of the defendant is prejudicial per se, and prohibits the plaintiff from claiming UM/UIM coverage. National Indemnity Co. v.Ryerson (May 7, 2002), S.D. Ohio No. C2-01-0223, at 14."
 {¶ 7} It is from the trial court's grant of summary judgment to Nationwide that Lipstreu now appeals. The appellant presents one assignment of error for this court's review:
 {¶ 8} "I. The Trial Court Erred When It Granted Summary Judgment In Favor Of The Appellee And Denied Appellant's Motion For Summary Judgment."
 {¶ 9} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines: 1) no genuine issues as to any material fact remain to be litigated; 2) the moving party is entitled to judgment as a matter of law; and 3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. Norris v.Ohio Std. Oil Co. (1982), 70 Ohio App.2d 1; Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317.
 {¶ 10} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. V. Catrett (1987), 477 U.S. 317,330; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112, 115. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356.
 {¶ 11} In Dresher v. Burt (1996), 75 Ohio St.3d 280, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Medina Ltd. of Texas (1991), 59 Ohio St.3d 108. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 12} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul
(1990), 71 Ohio App.3d 46, 50; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741.
 {¶ 13} The provisions of the Hartford policy applicable to the instant appeal are as follows:
 {¶ 14} Under the declarations, an "Ohio Uninsured Motorist Coverage — Bodily Injury" endorsement, number CA 21 33 06 95 is provided. Part A of the Insuring Agreement of the UM endorsement provides in part:
 {¶ 15} "A. Coverage
 {¶ 16} "* * *
 {¶ 17} "2. We will pay under this coverage only if a. or b. below applies:
 {¶ 18} "a. The limits of any applicable liability bonds or policies have been exhausted by judgments or payments; or
 {¶ 19} "b. A tentative settlement has been made between an `insured' and the insurer of the vehicle described in paragraph b. of the definition of `uninsured motor vehicle' and
 {¶ 20} "1. We have been given prompt written notice of suchsettlement; and
 {¶ 21} "2. Advance payment to the `insured' in an amount equal to the tentative settlement within 30 days after receipt of notification.
 {¶ 22} "* * *" (Emphasis added.)
 {¶ 23} Part E. "Changes in Conditions" of the UM endorsement provides in part as follows:
 {¶ 24} "The CONDITIONS of the policy for OHIO UNINSURED MOTORISTS INSURANCE are changed as follows:
 {¶ 25} "* * *
 {¶ 26} "2. DUTIES IN THE EVENT OF ACCIDENT, CLAIM, SUIT OR LOSS is changed by adding the following:
 {¶ 27} "a. A person seeking Uninsured Motorist Coverage must alsopromptly notify us in writing of a tentative settlement between the `insured' and the insurer of the vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle' and allow us 30 days to advance payment to that insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle.' (Emphasis added).
 {¶ 28} "1. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US is amended by adding the following:
 {¶ 29} "If we make any payment and the `insured' recovers from another party, the `insured' shall hold the proceeds in trust for us and pay us back the amount we have paid.
 {¶ 30} "Our rights do not apply under this provision with respect to Uninsured Motorist Coverage if we:
 {¶ 31} "a. Have been given prompt written notice of a tentative settlement between an `insured' and the insurer of a vehicle described in paragraph F.3.b. of the definition of `uninsured motor vehicle'; and
 {¶ 32} "b. Fail to advance payment to the `insured' in an amount equal to the tentative settlement within 30 days after receipt of notification."
 {¶ 33} "Section IV — Business Auto Conditions of the Business Auto Coverage Form," number CA 00 01 12 93, of the Hartford policy provides in part:
 {¶ 34} "The following conditions apply in addition to the Common Policy Conditions:
 {¶ 35} "A. Loss Conditions
 {¶ 36} "* * *
 {¶ 37} "2. Duties in the Event of Accident, Claim, Suit or Loss
 {¶ 38} "a. In the event of `accident', claim, `suit' or `loss',you must give us or our authorized representative prompt notice of the`accident' or `loss'. (Emphasis added.)
 {¶ 39} "* * *
 {¶ 40} "5. Transfer of Rights of Recovery Against Others To Us
 {¶ 41} "If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after `accident' or `loss' to impair them."
 {¶ 42} The appellant asserts that she is afforded UM/UIM coverage pursuant the Ohio Supreme Court's ruling in Scott-Pontzer v. Liberty Mut.Fire Ins. Co. (1999), 85 Ohio St.3d 660. In Scott-Pontzer, the Ohio Supreme Court determined that a commercial automobile policy issued toSuperior Dairy, Inc. provided benefits to Kathryn, the surviving spouse of Christopher Pontzer. Pontzer was an employee of Superior Dairy, not in the scope of his employment, when he was killed in an automobile accident caused by the negligence of another motorist. The commercial automobile policy issued to the corporation designated Superior Dairy, Inc. as the named insured, and the underinsured motorists section included the following definition of insured:
 {¶ 43} "B. Who Is An Insured"1. You.
 {¶ 44} "2. If you are an individual, any family member.
 {¶ 45} "3. Anyone else occupying a covered auto or a temporary substitute for a covered auto. The covered auto must be out of service because of its breakdown, repair, servicing, loss or destruction.
 {¶ 46} "4. Anyone for damages he or she is entitled to recover because of bodily injury sustained by another insured."
 {¶ 47} The court concluded that the above definition of "insured" was ambiguous in that the term "you" could be construed to include the corporation's employees because a corporation can act only by and through real live persons. Employing the legal principle that ambiguous provisions in an insurance contract will be construed against the insurer, the court concluded that Pontzer was an insured at the time of his death under the underinsured motorists provision of the commercial automobile policy issued to Superior Dairy, Inc.
 {¶ 48} In the instant matter, the lower court granted summary judgment in favor of Hartford on the issue of the appellant's failure to preserve Hartford's right of subrogation prior to settling and releasing the tortfeasor. Generally, this court has determined that it is unreasonable for an insurer to require an insured to protect subrogation rights of reimbursement that do not exist at the time of settlement with the tortfeasor. Specifically, the insured's failure to inform an underinsured motorist carrier of a settlement with the tortfeasor is insubstantial and does not operate to relieve that carrier of its obligation to provide underinsured motorist coverage when the UIM claimhad not been legally recognized at the time of the settlement with thetortfeasor. (Emphasis added.) See Oakar v. Farmers Ins. of Columbus,Inc. (April 17, 1997), Cuyahoga App. No. 70726 citing Wheatston CeramicsCorp. v. Turner (1986), 32 Ohio App.3d 21.
 {¶ 49} However, in reviewing the facts of the instant matter, it is apparent that the appellant had a duty to protect the subrogation rights of the appellee prior to settling with the tortfeasor. Unlike a settlement which occurred prior to the Ohio Supreme Court's decision inScott-Pontzer, the appellant in the instant matter was well aware of the legally recognized UIM claim at the time of the settlement with the tortfeasor. To be specific, the appellant settled with the tortfeasor on January 11, 2000, and with Nationwide on January 18, 2000. Thereafter, on August 28, 2000, the appellant, for the first time, notified the appellee of her intent to assert a possible UM/UIM claim against the appellee.
 {¶ 50} The appellant settled with the tortfeasor nearly eight months prior to notifying Hartford of her intent to assert an UM/UIM claim. Additionally, the appellant settled with the tortfeasor after the announcement of the Scott-Pontzer decision. Accordingly, the appellant was under a duty to protect the subrogation rights of reimbursement because those very rights existed at the time of settlement with the tortfeasor.
 {¶ 51} Notwithstanding the fact that the appellant breached the subrogation provisions of the Hartford policy, the Ohio Supreme Court recently determined, in Ferrando v. Auto-Owners Mut. Ins. Co., 2002-Ohio-7217, that "when an insurer's denial of underinsured motorist coverage is premised on the insured's breach of a prompt-notice provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the insured's unreasonable delay in giving notice." Id. at paragraph one of the syllabus. Further, "when an insurer's denial of uninsured motorist coverage is premised on the insured's breach of a * * * subrogation-related provision in a policy of insurance, the insurer is relieved of the obligation to provide coverage if it is prejudiced by the failure to protect its subrogation rights." Id. at paragraph two of the syllabus. In each instance, an insured's unreasonable delay in giving notice, or an insured's breach of a subrogation provision is presumed prejudicial to the insurer absent evidence to the contrary. Id.
 {¶ 52} Accordingly, in applying the facts of the instant matter, it is clear that the appellant was under a duty to protect Hartford's rights of subrogation prior to settlement with the tortfeasor. Therefore, in accordance with Ferrando, we hereby remand the instant matter to the lower court to determine whether the appellant's breach of the provisions for subrogation and consent to settle, which did destroy Hartford's subrogation rights, prejudiced Hartford. In followingFerrando, the lower court must be mindful that the burden of showing that Hartford was not prejudiced falls on the appellant, since her breach is presumed prejudicial to the insurer absent evidence to the contrary. Id.; See, also, Straughan v. The Flood Co., 2003-Ohio-290.
MICHAEL J. CORRIGAN, P.J., AND ANNE L. KILBANE, J., CONCUR.
[1] Nationwide paid $197,178.82 to the appellant and $17,821.18 to Medical Mutual of Ohio.